IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALENE COLLINS, | : | CIVIL ACTION NO. **1:CV-04-1438** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g). The Plaintiff, Dalene Collins, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

## I. PROCEDURAL HISTORY.

The Plaintiff filed an application for DIB on June 26, 2002, alleging an inability to work since February 23, 2000, due to pain in her left knee, cervical and lower back pain, fibromyalgia, and depression. (R. 15, 355).[1]  Her claim was denied initially, and a timely request for a hearing was filed. A hearing was conducted before an Administrative Law Judge ("ALJ") on April 2, 2003. Plaintiff was denied benefits pursuant to the ALJ's decision of April 25, 2003. (R. 15-24).

The Plaintiff requested review of the ALJ's decision by the Appeals Council. Said request for review was denied on May 12, 2004 (R. 7-9), thereby making the ALJ's decision the "final decision"

---

[1] The claimant previously filed an application for disability benefits on February 6, 2001, which was denied through the hearings level of appeal. (R. 15).

of the Commissioner. 42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 13 & 14).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the national economy"

>means work which exists in significant numbers either in the
>region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f),

416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 24). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date. (R. 23). Further, the ALJ determined that the medical evidence establishes that Plaintiff's back pain, fibromyalgia, depression and post-operation knee pain are severe impairments within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 17, 23).

The ALJ noted that the allegations of the Plaintiff and her husband regarding her limitations are not totally credible. (R. 23). When assessing her residual functional capacity, the ALJ found that Plaintiff retains the residual functional capacity to perform "sedentary work that is routine, repetitive unskilled work." (R. 22, 23 @ ¶ 7.). The ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (R. 21, 23). Thus, the ALJ found that the Plaintiff met her burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f), 416.920(f). The final and fifth step requires an analysis of whether the Plaintiff, based on her age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy. *See Plummer v. Apfel*, 186 F.3d

4

at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on the testimony of an impartial vocational expert, the ALJ concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity ("RFC"), she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 22-23). Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as a laundry worker, a grading/sorter worker, and as an assembler. (R. 22).  Thus, Plaintiff was found to be not disabled.  (R. 22).

The relevant time period for this case is February 23, 2000 (alleged onset date of disability) (R. 355),  through April 25, 2003 (date of ALJ's decision). (R. 24).

**IV.   DISCUSSION.**

This appeal involves the denial of Plaintiff's application for DIB.  Plaintiff filed an application for DIB in June, 2002, which was denied in April, 2003, by the decision of an ALJ. The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.  It was determined that the Plaintiff was insured for DIB through the date of the ALJ's decision.  Thus, Plaintiff had to show that she was disabled on or before April 25, 2003.  (R. 23).[2]

---

[2]In reaching this determination, the Administrative Law Judge found that Plaintiff met the nondisability requirements of the Social Security Act and was insured for disability benefits through the date of her decision.  Therefore, Plaintiff had to establish disability on or prior to

While the ALJ found that the Plaintiff had an impairment or a combination of impairments considered "severe," she determined that the impairments did not meet or medically equal a listed impairment. (R. 23 ¶ 4.). Essentially, the Plaintiff contends that the ALJ failed to "assess or discuss" the cervical spine MRI results, the ALJ erred in rejecting the opinions of her treating physicians, and that the ALJ erred in finding that the Plaintiff and her husband were not credible. (Doc. 13, p. 3,4).

### *A. Background*

The Plaintiff was born on February 20, 1966. (R. 99).[3] She was 37 years old at the time of the hearing before the ALJ. (R. 16). Thus, Plaintiff is a younger individual under the Regulations. (R. 24). *See* 20 C.F.R. § 404.1563(c). She has an 11th grade education (R. 361), and transferability of skills from her past relevant work is not an issue. (R. 23). The Plaintiff has not been engaged in substantial gainful activity since her alleged onset date of February 23, 2000. (R. 23 ¶ 2.). The ALJ found that the Plaintiff could not perform any of her past relevant work. (R. 21). The Plaintiff alleges that she is unable to work because of fibromyalgia, back pain, and somatic depression. (R. 355). The ALJ found that the Plaintiff's impairments were "severe." Further, the ALJ found that the Plaintiff retained the residual functional capacity to engage in a significant range of sedentary work. (R. 21). Finding that a significant number of such jobs exist in the national economy based on the

---

this date.

[3] In the hearing transcript, Plaintiff states that her date of birth is 3/20/66. (R. 99) However, on her application for DIB, her date of birth is recorded as 2/20/66. (R. 312).

testimony of a vocational expert ("VE") at the hearing[4], the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 23).

### B. Medical Evidence

On appeal, Plaintiff generally asserts that the ALJ's decision is not supported by substantial evidence. Specifically, the Plaintiff contends that the ALJ failed to properly "address or discuss" the findings of her cervical spine MRI, that the ALJ erred in finding that Plaintiff's condition did not meet or equal the criteria of listing 12.04, and that the ALJ erred in finding that the Plaintiff's and her husband's testimony were not entirely credible. (Doc. 13, p. 3,4).

Plaintiff was in an automobile accident on February 22, 2000. Plaintiff was seated in the front passenger seat of the car when the car was struck in the rear passenger side door by a car traveling approximately 40 m.p.h. (R. 226). Plaintiff did not seek immediate treatment. (R. 199). On March 8, 2000, she went to the Holy Spirit Hospital emergency room complaining of lumbosacral back pain, cervical neck pain and right knee pain. (R. 199). Plaintiff was examined by Dr. Noelle Rotondo, who determined that Plaintiff's symptoms were musculoskeletal in nature and that Plaintiff was experiencing lumbosacral midline and paraspinal tenderness to palpation. (R. 200). Dr. Rotondo further determined that the X-ray's of Plaintiff's cervical spine and lumbosacral spine showed no acute abnormalities and further opined that Plaintiff's complaint of numbness in her leg was more subjective than objective. (R. 200).

---

[4] The ALJ stated Dr. Ryan was the Vocational Expert. (R. 123).

Plaintiff was referred to Dr. Matunis and then to Dr. Baker. After an MRI on Plaintiff's lower back, Dr. Baker determined that the MRI was unremarkable other than for degenerative disc disease at L4-L5. (R. 225). Dr. Baker indicated that there was nothing on her upper or lower extremity examination to suggest any cervical or lumbar radiculopathy, that the problems would resolve in time, and that no surgery or treatment was necessary. (R. 225).

In June of 2000, an MRI on Plaintiff's left knee indicated that her lateral meniscus had been torn. (R. 220). Plaintiff underwent surgery to repair her left knee on July 14, 2000, which was performed by Dr. Baker. (R. 233). In August of 2000, Plaintiff indicated to Dr. Haiping Mei that she no longer experienced pain in her left knee but that the pain in her neck and back persisted. (R. 211). On August 10, 2000, Plaintiff began physical therapy for her neck and back pain. (R. 213). On September 14, 2000, Plaintiff reported that her pain had improved significantly. She indicated that the level of pain had declined from a 9/10 level to a 6/10 level. (R. 213). On October 12, 2000, Plaintiff reported that her level of pain had reduced to 2/10, that she was sleeping without a problem, and that she was off her medications. (R. 213). Dr. Mei also recommended that Plaintiff continue with a home exercise program in order to lose weight. (R. 210).

On January 4, 2001, Plaintiff saw Dr. Rodgers, complaining of pain in her left hip and on the right side of her neck. (R. 230). Dr. Rodgers also noted in his report that the Plaintiff was working at that time at her husband's garage doing paper work, answering the phone, and handing him tools. (R. 230). Dr. Rodgers opined that Plaintiff was capable of sedentary work. (R. 230).

On February 28, 2001, Dr. Michelini set up an EMG of Plaintiff's lower extremities. (R. 465). The results of the EMG showed that both lower extremities were normal and that there was no

nerve injury. (R. 465, 530).

On May 4, 2001, Plaintiff underwent a psychiatric evaluation performed by Dr. Wehman. At that time, Plaintiff indicated to Dr. Wehman that she had been experiencing depressed mood, increased irritability, decreased appetite, insomnia, and frequent crying. (R. 438). Plaintiff suggested that her symptoms were a result of her inability to participate in many activities which she once enjoyed, such as going camping, taking long car rides, and caring for her children. (R. 438). Plaintiff also indicated that her ability to concentrate and remember were unaffected, she was never suicidal, and she did maintain interests in painting and other pursuits. (R. 438).

On September 17, 2001, Plaintiff, after being referred by Dr. Michelini, underwent a pain management evaluation performed by Dr. Wiecks. (R. 275). Dr. Wiecks gave Plaintiff the Beck Depression Inventory test, on which she scored a 44. *Id*. Dr. Wiecks diagnosed Plaintiff with chronic aches and pains. *Id*. Dr. Wiecks also indicated that it was vital for the successful treatment of fibromyalgia that she quit smoking, lose weight, and begin regularly exercising. *Id*.

In July of 2002, Plaintiff had an MRI of the cervical spine. (R. 524). The MRI indicated that there was no significant abnormality at C2-3 or C3-4. *Id*. At C4-5, there was no evidence of disc herniation or canal stenosis, but there was mild left uncovertebral joint hypertrophy with mild left neural foraminal stenosis. *Id*. At C6-7 there was "mild-moderate" left posterolateral disc herniation. (R. 525).

On October 11, 2002, Plaintiff had an independent medical evaluation which was performed by Dr. Costa. (R. 521). After a physical examination of Plaintiff, Dr. Costa observed that Plaintiff had trouble bending to take her socks and shoes off. (R. 522). Dr. Costa performed an "upper

extremity sensation test" which revealed "decreased [sensation] in the palm and dorsal distribution to the ulnar nerve on the left." *Id*. Dr. Costa also determined that there was "moderate give way with bilateral upper extremity testing throughout including hand grasp." *Id*. Dr. Costa also noted that Plaintiff had full range of motion in her neck with good spontaneous movement and that Plaintiff's lower extremities were intact. *Id*. Dr. Costa concluded that "the prognosis for recovery is excellent with appropriate physical therapy and medications." *Id*.

### *C. Vocational Expert.*

Plaintiff was 37 years old at the time and has an 11th grade education. She last worked in her husband's garage. (R. 123). There, she assisted him with mechanical work and also performed clerical duties. *Id*. The vocational Expert (VE) classified this work as "medium exertional level" work. *Id*. The VE determined that some of the Plaintiff's mechanical skills were transferable to the "light exertional level." *Id*. The VE further determined that Plaintiff had no other transferable skills from past employment. *Id*.

The ALJ then asked the VE the following hypothetical question:

Please assume an individual who is 37-years-old, 11th grade education, work history as described here today. Please assume that that person is limited to sedentary work as defined by the commissioner for Social Security, that allows a sit/stand option, that is routine, repetitive, unskilled. And involves no more then occasional, up to one-third of the workday, interaction with others, and that also involves no more then occasional squatting, kneeling, bending, crouching, crawling and climbing stairs. With those limitations would it be your testimony that this person could not return to any of the work that Ms. Collins did previously?

(R. 124-125).

The VE testified that Plaintiff could not perform her prior work, but that there were a significant number of jobs in the national and regional economies which an individual of Plaintiff's

10

age, education, and experience and with Plaintiff's limitations could perform. (R. 125).

The ALJ found that the Plaintiff had an impairment or combination of impairments considered severe, but there was no evidence that the impairments met or equaled any listed impairment. Thus, the ALJ found that Plaintiff was able to perform a significant range of light work. We agree that this finding was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

#### Claim I

Plaintiff first contends that the ALJ erred by failing to "properly address or discuss" the MRI results which indicated disc herniation. (Doc. 13, p. 7). Specifically, Plaintiff points to the MRI conducted in July of 2002. The results of this MRI showed that there was a moderate disc bulge at C5-6, and there was a mild to moderate herniation at C6-7. (R. 524). Plaintiff contends that pursuant to these results, Plaintiff's request for an EMG on her upper extremities should have been performed so as to complete the medical record. (Doc. 13, p. 8). Plaintiff alleges that the ALJ's failure to order an EMG on her upper extremities, after a request was made by plaintiff's counsel to do so, was improper because 20 C.F.R. § 404.1519a (2004) requires additional testing be ordered when there is an inconsistency in the record or the record is not sufficient to support a decision. (Doc. 13, p. 8).

A consultative exam will be ordered when the available evidence is not sufficient to support a decision on your claim. 20 C.F.R. § 404.1519a(b). An exam may also be ordered where there is a "conflict, inconsistency, ambiguity or insufficiency" which must be resolved and cannot be

resolved by other means.  20 C.F.R. § 404.1519a(b)(4).

After considering the record as a whole, the ALJ determined that additional EMG studies of Plaintiff's cervical spine were not necessary.  (R. 21).  The ALJ also noted that Plaintiff had not cited to anything in the record to support her contention that additional EMG testing was necessary.  *Id*.

As was the case in the ALJ proceeding, Plaintiff has failed to cite anything in the record, with respect to her current appeal, to support her contention that it was necessary for the ALJ to order an EMG.  (Doc. 13, pp. 7-9).  Plaintiff's early medical records indicate that her upper extremity pain was not an issue.  Drs. Mei, Rodgers, and Baker all reported that the upper extremities were all intact and that Plaintiff had full strength and full range of motion in her upper extremities.  (R. 211, 215, 226).  As stated, in October, 2002, Plaintiff had decreased sensation in her palm and dorsal distribution, but her lower extremity sensation and strength were largely intact.  (R. 325).  In any event, a consultative exam is only appropriate where the record is not sufficient to make a ruling or where there is an inconsistency which must be resolved.  Neither scenario is present here.  First, the record, as detailed above, is adequate and does support the ALJ's determination.  Second, there has been no inconsistency identified in the record which would necessitate further examination. Furthermore, the inquiry here is wether Plaintiff has the residual functional capacity to perform sedentary work.  Plaintiff indicated that she is still able to lift objects which weigh between 15-20 pounds.  (R. 321).  Additionally Plaintiff indicated that she can use a knife and fork, television remote, and dial a telephone.  *Id*.

In making her determination, the ALJ considered Dr. Costa's October 11, 2002, report.  (R. 19).  Dr. Costa's report was completed after the Plaintiff's July, 2002 MRI, which Plaintiff contends

was not addressed by the ALJ. (R. 521). Dr. Costa's report noted the results of Plaintiff's July, 2002, MRI. (R. 521). Dr. Costa's report stated that Plaintiff sat comfortably in the exam room and moved well on the exam table. (R. 522). Dr. Costa also noted that Plaintiff had full range of motion in her neck but did experience some discomfort in her arm. (R. 522). Dr. Costa ultimately determined that Plaintiff's prognosis for recovery was "excellent with appropriate physical therapy and medications."

Plaintiff cites, generally, *Lewis v. Barnhart* in support of her contentions. In *Lewis,* the District Court found that the ALJ erred in not granting Plaintiff's request for a consultative examination to determine the extent of the Plaintiff's depression. *Lewis v. Barnhart*, 2004 WL 1721521, 5 (E.D. Pa.). The Court observed that the ALJ denied the request based upon her general policy of denying such requests. *Id*. In *Lewis*, there were not significant medical records documenting plaintiff's depression, and the ALJ denied the request before hearing testimony about the plaintiff's struggle with depression. *Id*.

The circumstances of the case at bar are different than those present in *Lewis*. The ALJ in the instant case did not deny Plaintiff's request for an EMG based on some general policy without first considering the evidence. In addition, the ALJ in the immediate case addressed the Plaintiff's request in her report and did not grant it because first, Plaintiff's representative did not point to anything in the record which suggested that EMG testing was necessary and, second, because the ALJ, after evaluating "the evidence of record as a whole," determined that it was not necessary. (R. 21).

In light of the above discussion, the ALJ's failure to order an EMG of Plaintiff's upper extremities was not necessary because sufficient evidence was available in the record for the ALJ to substantiate her decision.

### *Claim II*

Plaintiff's second contention is that the ALJ erred in rejecting the opinion of Dr. Wiecks and Dr. Wehman that the Plaintiff suffered from severe depression. (Doc. 13, p. 9). Specifically, Plaintiff claims that her depression met or equaled the requirements of listing § 12.04 of 20 C.F.R. pt. 404, subpt. P, app.1 (2004). The ALJ found that Plaintiff did satisfy the requirements of 12.04A, but that her depression did not satisfy the requirements of 12.04B. (R. 18). In order to meet the required level of severity for 12.04 disorders, one must satisfy the requirements of both A and B, or C. 12.04B requires that the depressive disorder found in 12.04A must result in two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff had mild restriction on daily living, maintained relationships with her family despite some irritability, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. 18). Plaintiff contends that she meets the requirements of 12.04B because "a severe level of depression is the same or greater than the required 'marked' level." (Doc. 13, p. 13).

Plaintiff has failed to cite any authority to support her contention that a severe level of depression obviates the need to show 12.04B requirements. (Doc. 13, pp. 10-13). To satisfy the requirements of 12.04B, it is necessary for Plaintiff to produce evidence which demonstrates at least two of the four results listed. Instead, Plaintiff here asserts that she has severe depression and therefore meets the requirements of 12.04B. The Court does not agree that a claim of severe depression obviates the requirement of producing specific evidence that one meets the requirements of 12.04B. The evidence which Plaintiff cites does not demonstrate any of the requirements of 12.04B; it merely indicates that Plaintiff is depressed. Plaintiff has not made a showing of how her depression satisfies the 12.04B requirements.[5]

Furthermore, the ALJ's finding that Plaintiff did not meet the requirements of 12.04B is supported by substantial evidence in the record. Dr. Weeks, while a non-examining physician, specifically addressed the requirements of 12.04B in his report dated February 27, 2001. (R. 247-257). Dr. Weeks indicated that Plaintiff's condition resulted in only a mild restriction of activities of daily living, mild difficulty in maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and that she had no repeated episodes of decompensation. (R. 257).

In a similar evaluation performed on October 16, 2002, Dr. Rightmyer reached the same conclusions as had Dr. Week in his February, 2001, report. Namely, Dr. Rightmyer concluded that Plaintiff's condition resulted in only a mild restriction of activities of daily living, mild difficulty in

---

[5] We note that the Plaintiff has the burden of proving that she meets all of the requirements for a listing. See *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).

maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and that she had no repeated episodes of decompensation. (R. 494).

While Dr. Weeks and Dr. Rightmyer did not personally examine the Plaintiff, the reports produced by both doctors speak directly to the requirements of 12.04B. The reports of Plaintiff's examining doctors to which Plaintiff cites do not address the 12.04B requirements. Therefore, the ALJ's reliance on the non-examining physicians' reports was justified. Thus, the ALJ's findings that Plaintiff's condition did not meet the requirements of 12.04B were supported by substantial evidence in the record.

### *Claim III*

Plaintiff's final contention is that the ALJ erred in failing to find the testimony of Plaintiff and her husband credible. (Doc. 13, p. 13). Specifically, Plaintiff argues that the ALJ must point to contrary medical evidence when dismissing testimony as not credible. *Id*. The Plaintiff further asserts that the ALJ improperly dismissed the testimony as not credible based on the record as a whole. *Id*.

The ALJ has the authority to make credibility determinations. *Irvin v. Barnhart*, 2005 WL 441358, p. 3 (E.D. Pa.) Contrary to Plaintiff's assertions, the ALJ has cited the record and given multiple reasons to support her finding that the testimonies were "not entirely credible." (R. 19-20).

The ALJ first cited the October 11, 2002, report by Dr. Costa in which it was noted that Plaintiff sat comfortably in the exam room and moved well on the exam table. (R. 19, 522). The ALJ cited the psychiatric evaluation on May 4, 2001, which noted that Plaintiff was dressed and groomed appropriately, as well as alert and cooperative with speech that was relevant, productive,

16

and goal oriented. (R. 19, 439). The ALJ also noted that the Plaintiff had claimed not to have worked since the accident, but in a report by Dr. Green dated January 4, 2001, it is noted that Plaintiff was at that time helping her husband in his garage, where she was answering phones and handing him tools. (19-20, 434). The ALJ continued to support her finding that the Plaintiff and her husband were not entirely credible by pointing to Plaintiff's statement that her legs were giving out 1-2 times a week, while a report by Dr. Michelini dated July 22, 2002, stated that Plaintiff's legs were not giving out. (R. 452).

Furthermore, the ALJ's conclusion that Plaintiff was unable to return to her past work and may now only perform sedentary work suggests that the ALJ found Plaintiff's testimony and her husband's testimony partially credible, and it was not completely dismissed by the ALJ. *See generally Irvin v. Barnhart, supra* at p. 3.

In light of the above, the ALJ provided ample support for her decision, which was documented in the record. Therefore, the ALJ's credibility determination was supported by substantial evidence.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be denied.

                                                   **s/ Thomas M. Blewitt**
                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated: June 6, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALENE COLLINS, | : | CIVIL ACTION NO. **1:CV-04-1438** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |

### **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 6, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: June 6, 2005**